J-S36034-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES EDWARD HUSOK | : | |
| | : | |
| Appellant | : | No. 129 WDA 2020 |

Appeal from the PCRA Order Entered December 30, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0012327-2015

BEFORE:  OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    FILED OCTOBER 08, 2020

James Edward Husok (Husok) appeals from the order of the Court of Common Pleas of Allegheny County (PCRA court) denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After review, we affirm.

I.

On the night of September 18, 2015, and into the early morning hours of September 19, 2015, Heather Guerra (Guerra), Husok's estranged wife, was at a bar with her boyfriend, Michael Welsh (Welsh).  Guerra and Welsh left around 1:45 a.m. and went back to his mother's home where the two were living.  After returning, Guerra and Welsh got into a fight.  Once Welsh fell

_____

[*] Retired Senior Judge assigned to the Superior Court.

asleep, Guerra called Husok to come and get her. Husok, who lived not far away, picked up Guerra and took her back to his home.

At about 5:30 a.m., Welsh woke up and discovered Guerra was gone. About an hour later, Welsh began to call and text Guerra. Suspecting that she was with Husok, Welsh texted her that he was on his way to Husok's home. When Guerra told this to Husok, he armed himself with a handgun and hammer and went outside to look for Welsh. A little before 7:00 a.m., Husok came upon Welsh in a nearby alley and shot him in the chest. Husok then ran back to his home and discarded the handgun and hammer. After grabbing a different handgun, he returned to the alley and called 911. Husok told the dispatcher that he went outside after hearing a gunshot and found Welsh's body in the alley. The police soon arrived and took Husok into custody for questioning. Welsh, meanwhile, was pronounced dead at the scene.

After initially denying involvement, Husok admitted that he shot Welsh. According to his statement, Welsh was in the alley talking on his cell phone and said "I'm going to kill them." Husok then yelled out, "What the f--- did you say?" Welsh turned around and began walking toward Husok. Welsh then made a move to his left side. Afraid that Welsh was reaching for a gun, Husok fired one shot into his chest. The police, however, did not find a gun near Welsh. Instead, the police found only a cell phone in Welsh's left back pocket. Additionally, cell phone records showed that Welsh was not talking to anyone just before being shot by Husok.

On October 3, 2016, Husok proceeded to a jury trial on charges of criminal homicide, possessing instruments of crime (PIC) and tampering with evidence.[1] At trial, defense counsel pursued a self-defense theory. As part of this theory, counsel promised the jury that he would call Guerra as a witness:

> Now, ladies and gentlemen, what [the Commonwealth] did not tell you was this, leading up to this, Heather Guerra, the wife of my client who, they were separated, but amicably separated, was getting beaten by Michael Welsh. She had to remove herself from the home that they were staying in. She had nowhere to go. So what does she do? She calls her husband, because they have an agreement with one another that they will remain friends, they will remain close, because the relationship just came to an end, they couldn't work it out anymore, but they still loved one another.
>
> She calls him at four in the morning waking [Husok] out of his sleep. He is minding his own business. [Husok] and [Guerra] make the wise decision he is not going to pick her up at the house. [Husok] is not looking for trouble. He picks her up down the street, a couple doors down, at the same bar she left at.
>
> And she'll come here and tell you that. And you will see the marks on her arms of her getting thrown around, thrown into walls. You'll see those marks. And the prosecutor didn't tell you about those marks. And the police, they didn't want to hear it, either. But our private investigator took the pictures a day after this happened. And she will come here and testify to all of this.

N.T., Vol. I, 10/3/16, at 36-38.

In its case in chief, the Commonwealth presented evidence that Husok tested positive for gunshot residue (GSR). Despite committing to a self-

---

[1] 18 Pa.C.S. §§ 2501(a), 907(a) and 4910(1).

defense theory in his opening, defense counsel's cross-examination implied that Husok did not shoot Welsh.

> Q. Sir, you said that you asked [Husok] what his occupation was; is that correct?
>
> A. That's correct.
>
> Q. Did he tell you that he's an industrial painter; is that correct?
>
> A. Yes, he did.
>
> Q. And did he tell you that he works with lead and other chemicals?
>
> A. No, just that he was a painter.
>
> Q. Did you inquire?
>
> A. No.
>
> Q. Okay. And you said that certain occupational tasks could cause one to have these elements present on their hands; correct?
>
> A. Some of them, yes.

N.T., Vol. 1, 10/4/16, at 257-58.

After resting its case, the Commonwealth argued that defense counsel had forfeited his self-defense theory. Rather than preventing Husok from presenting any evidence in his case, the trial court deferred ruling on the issue until the end of the case. Despite the trial court's ruling, defense counsel decided not to call Guerra, even though she was subpoenaed and available to testify. Instead, defense counsel called his investigator and showed the jury the photographs that he took of Guerra's bruising on her arms, legs and chest. Ultimately, even though Husok did not testify, the trial court found that

enough evidence was presented for the jury to be given a self-defense instruction.[2] Because Guerra never testified, the trial court also instructed the jury to disregard what defense counsel said during his opening statement about what she would testify to.

Husok was found guilty of third-degree murder and sentenced to 20 to 40 years' imprisonment.[3] After the denial of his post-sentence motion for reconsideration, Husok appealed to raise an excessive sentence claim. On September 7, 2018, we affirmed the judgment of sentence. Commonwealth v. Husok, No. 201 WDA 2017 (Pa. Super. 2018) (unpublished memorandum). Husok did not file a petition for allowance of appeal.

On August 23, 2019, Husok filed a counseled PCRA petition alleging that defense counsel was ineffective for promising to call Guerra as a witness but then failing to do so. In support, Husok attached an affidavit from Guerra:

> I would have testified that in the early morning hours of September 19, 2015, I remember being beaten by [Welsh] at his mother's boyfriend's house, and after the beating I called [Husok] to pick me up. Mr. Husok picked me up in front of the Cherry Lane bar and we proceeded to his house. We were at [Husok's] house about 2 hours when we started to get threatening phone calls and text messages from [Welsh]. [We] were worried that Welsh would come over to [Husok's] house and hurt us, so [Husok] went outside to see if [we] were safe. An altercation occurred in which [Welsh] was killed. I did not witness the incident.

---

[2] The trial court also gave the jury voluntary manslaughter instructions.

[3] Husok was also found guilty of PIC and tampering with evidence but received no further penalty.

On October 3, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss without a hearing. After Husok responded, the PCRA court denied his petition on October 23, 2019. Husok filed a timely notice of appeal and now alleges that the PCRA court erred in denying his petition without an evidentiary hearing.[4]

II.

To be eligible for relief under the PCRA, a petitioner bears the burden of showing that their conviction resulted from one of several enumerated causes, including the ineffective assistance of counsel. See 42 Pa.C.S. § 9543(a)(2)(ii); see also Strickland v. Washington, 466 U.S. 668 (1984); Commonwealth v. Pierce, 527 A.2d 973, 975-76 (Pa. 1987). Because

_____

[4] "We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error." Commonwealth v. Medina, 209 A.3d 992, 996 (Pa. Super. 2019) (citation omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

Commonwealth v. Blakeney, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

counsel is presumed to have provided effective representation, a petitioner bears the burden to prove otherwise. See Commonwealth v. Fears, 86 A.3d 795, 804 (Pa. Super. 2014).

> To prevail on an ineffectiveness claim, [a petitioner] must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [petitioner] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.[5]

Id. (citation omitted). "Failure to prove any prong of this test will defeat an ineffectiveness claim. When [a petitioner] fails to meaningfully discuss each of the three ineffectiveness prongs, he is not entitled to relief, and we are constrained to find such claims waived for lack of development." Id. (citations and internal quotation marks).

_____

[5] When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of the Strickland test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

Commonwealth v. Sneed, 45 A.3d 1096, 1108-09 (Pa. 2012).

III.

A.

On appeal, Husok reasserts that defense counsel was ineffective for failing to call Guerra as a witness. Because the Commonwealth does not dispute that Husok's claim has arguable merit, we address whether there was a reasonable basis for defense counsel not to call Guerra.

"With regard to the reasonable basis prong of [the ineffective assistance of counsel] test, it is incumbent on the petitioner to demonstrate that counsel's chosen course of action had no reasonable basis designed to effectuate his client's interests." Commonwealth v. Weiss, 81 A.3d 767, 798 (Pa. 2013) (citation omitted).

> Generally, where matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests. A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

Commonwealth v. Colavita, 993 A.2d 874, 887 (Pa. 2010) (citations and quotation marks omitted). Additionally, "an evidentiary hearing on counsel's strategy is preferred before the PCRA court decides if counsel lacked a reasonable basis for his actions, except in those cases where the reasons for counsel's conduct are clear and apparent from the record." Commonwealth v. Postie, 200 A.3d 1015, 1023 (Pa. Super. 2018) (citing Commonwealth v. Hanible, 30 A.3d 426, 442 (Pa. 2011)).

In his PCRA petition, Husok averred that there was no reasonable basis for defense counsel not to call Guerra, especially after he told the jury in his opening statement that she would testify. PCRA Petition, 8/23/19, at Paragraph 7. The PCRA court found that defense counsel, despite his promise, "ultimately decided as part of [his] trial strategy not to call Guerra as a witness." PCRA Court Opinion, 2/12/20, at 5. Because the PCRA court denied the petition without an evidentiary hearing, we review whether Husok raised a genuine issue of material fact as to the reasonableness of defense counsel's actions.

We can discern from the record that defense counsel did not call Guerra in response to the Commonwealth's argument that he had forfeited his self-defense theory because of his cross-examination of the GSR expert. Just after his investigator testified, defense counsel told the trial court that he was not going to call any more witnesses "depending on the way that you rule on this motion that [the Commonwealth] raised[.]" N.T., Vol. II, 10/6/16, at 543. He made a similar statement after the trial court deferred its ruling and asked if there would be any more witnesses. Confirming there would not, defense counsel stated that he had "made some decisions based on what we talked about before lunch," referring to the Commonwealth's motion. Id. at 568. Finally, defense counsel clarified his strategy one more time in response to criticism for promising to call Guerra but failing to do so.

THE COURT: I'm just saying, and I'm not faulting you for doing it. Don't question [the prosecutor] as to why he didn't do things. You know exactly why.

[DEFENSE COUNSEL]: But the whole thing that happened before lunch when [the prosecutor] raised these issues changed my entire strategy. I have to go with my strategy.

Id. at 582.

While these statements show that defense counsel had a strategy for not calling Guerra, there still remains the question whether that strategy had a reasonable basis. Unfortunately, the PCRA court did not address reasonableness in either its Rule 907 notice or its Pa.R.A.P. 1925(a) opinion. After reviewing the record, we find there is a genuine issue of material fact on the reasonableness of defense counsel's action in not calling Guerra as a witness after telling the jury that he would.

While the trial court stated that it would reserve ruling on the self-defense instruction until the end of trial, the trial court made clear that its ruling was not intended "to prevent any kind of testimony coming in[.]" N.T., Vol. II, 10/6/16, at 560. Observing that Husok's statement to the police and the photographs of Guerra potentially supported a self-defense theory, the trial court stated:

So I would rather just wait and see how that develops and address it as an issue in the jury instructions as opposed to preventing testimony that the defendant would seek to present in his own defense.

Id. at 561.

Consequently, defense counsel's self-defense theory remained intact despite the Commonwealth's argument to preclude it and nothing precluded Guerra from being called as a witness.

As noted earlier, defense counsel committed to a self-defense theory in his opening statement and promised the jury that he was going to call Guerra to testify that her bruises were caused by Welsh. During his case, defense counsel called his investigator and admitted the photographs of Guerra. However, when it came time to call Guerra, counsel decided to go back on his promise to the jury and not call her—even though the trial court had informed defense counsel that he was not prevented from introducing any evidence tending to support self-defense. Defense counsel still pursued his self-defense theory in his closing statement and the trial court ultimately gave the jury the self-defense instruction as requested by counsel.

Aside from the Commonwealth's motion, it does not appear that there was any unforeseen testimony that would warrant defense counsel to alter his trial strategy and decide not to call a witness who he had expressly promised in the opening statement would be called. This being the case, based on the record before us, we conclude that the PCRA court erred in finding that there was no issue of material fact as to the reasonableness of defense counsel's decision not to call Guerra, especially given the obvious damage to his credibility that would result from him failing to call a witness that he represented as being essential to his case.

The Commonwealth suggests an alternative strategy for why defense counsel did not call Guerra. After the defense rested, the Commonwealth intended to call Guerra as a rebuttal witness. While explaining that Guerra could not testify about how she got the bruises, the trial court implied that defense counsel promised to call Guerra with no intention of ever calling her.

> THE COURT: What we have in front of them is a rebuttal of the testimony [the investigator], whose testimony was on Monday after the incident, or Tuesday, he went over and took pictures of [Guerra], and that these were the photographs. That was the testimony.
>
> [COMMONWEALTH]: Uh-huh.
>
> THE COURT: That's it.
>
> [COMMONWEALTH]: Well, I'm entitled to explore through rebuttal witnesses how [Guerra] got [the bruises]. The witness was clearly called -- or the photographs were clearly introduced —
>
> THE COURT: What happened was [defense counsel] played you. He assured you he was going to call her, and he didn't. That's what he did. Now, you can call her on rebuttal. But it can only be related to the photographs.

Id. at 572 (emphasis added). The Commonwealth believes this exchange shows that defense counsel had a reasonable basis for not calling Guerra, since he was able to admit the photographs of her bruising but avoided her from being cross-examined about her prior statements to the police after the shooting. See Commonwealth's Brief at 15.

To the extent that Guerra gave any statements to the police damaging to Husok's defense, they are not in the record and we will not speculate about their substance. Moreover, the above exchange does not reveal a reasonable

strategy for promising to call Guerra and then reneging on that promise. The trial court's comment that defense counsel "played" the Commonwealth suggests that counsel promised to call Guerra to forestall the Commonwealth from having her testify in its own case in chief. Whether this was defense counsel's strategy is not clear on the record, nor would we infer that counsel intended such a strategy.

In sum, because defense counsel was never prevented from calling Guerra, there is a genuine issue of material fact whether there was a reasonable basis for counsel's decision to reverse course from his opening statement and not call Guerra as a witness.

### B.

Having found a genuine issue as to the reasonable basis prong, we must then determine whether Husok was prejudiced by the decision not to call Guerra as a witness. To establish prejudice for failing to call a witness, the absence of the testimony of the witness must be so prejudicial as to have denied the defendant a fair trial. See Sneed, 45 A.3d at 1109. To prove that he was denied a fair trial, a petitioner must show that the witnesses' testimony would have "created a reasonable probability of a different outcome at trial." Commonwealth v. Wantz, 84 A.3d 324, 333 (Pa. Super. 2014) (citations omitted).

Initially, we credit Husok's argument that defense counsel damaged his case by breaking his promise to the jury that Guerra would testify. In his

brief, Husok cites several federal court cases for the proposition that there are few things a defendant's counsel can do that is more damaging to his case than failing to produce evidence that had been promised in an opening statement. See, e.g., Saesee v. McDonald, 725 F.3d 1045, 1050-51 (9th Cir. 2013) (explaining that unfulfilled promises to present evidence result not only in the jury drawing negative inferences against the promised evidence but also damages the credibility of counsel). Absent an unforeseen event warranting reversing course, an unfulfilled promise to present evidence is unquestionably detrimental to a defendant's case.

We also disagree with the Commonwealth that the trial court cured any potential prejudice through its instruction to the jury to disregard defense counsel's representations about Guerra's testimony.[6] Indeed, the Commonwealth requested and was granted permission to comment on the unfulfilled promise, and then did so briefly in its closing statement by highlighting the trial court's instruction and stating it wanted the jury, "to know that [defense counsel] promised you[.]" N.T., Vol. II, 10/6/16, at 727.

_____

[6] The trial court's instruction was as follows:

> In his opening statement [defense counsel] had referenced some testimony from a witness named Heather Guerra who if called to testify would testify to certain facts. Any facts that he may have stated you are not to consider because that witness did not testify.

N.T., Vol. II, 10/6/16, at 663.

- 14 -

That said, a failure to call a promised witness is not ineffectiveness per se, and none of the federal precedent cited by Husok stand for such a proposition. As a result, despite defense counsel's unfulfilled promise to call Guerra, we must still determine whether there is a genuine issue of material fact that her testimony, if presented, would have created a reasonable probability of a different outcome at trial. We conclude there is not.

Significantly, whether Welsh actually physically assaulted Guerra earlier in the morning was a collateral issue to the main factual dispute: whether Husok was justified in shooting Welsh in the alley. The use of force against a person is justified "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force" by the other person. See 18 Pa.C.S.A. § 505(a). A self-defense claim entails three elements: (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (2) the defendant was free from fault in provoking the difficulty which culminated in his use of deadly force; and (3) the defendant did not violate any duty to retreat. See Commonwealth v. Patterson, 180 A.3d 1217, 1231 (Pa. Super. 2018) (citing Commonwealth v. Mouzon, 53 A.3d 738, 740 (Pa. 2012)).

Here, the primary evidence for Husok's self-defense theory was his statement to the police later that morning. In that statement, Husok claimed that he heard Welsh on his cell phone say something to the effect of "I'm going

to kill them" just before turning around and walking toward Husok and making a move to his left side. N.T., Vol. I, 10/5/16, at 416. However, there was no evidence corroborating Husok's version of events. Importantly, in contrast to Husok's claim that Welsh was on his cell phone in the alley, the police found Welsh's cell phone in his back left pocket. N.T., Vol. I, 10/3/16, at 77. Cell phone records also showed that Welsh neither received nor made any connecting phone calls just before being shot by Husok. Finally, Husok's post-shooting actions demonstrated his consciousness of guilt as he rushed back to his home to hide the firearm. He lied to the 911 dispatcher about finding Welsh's body and then lied again in his statement to the police later that morning before finally admitting to shooting Husok.[7]

Husok ignores these facts in his brief, opting instead to argue that Guerra's testimony that she was beaten by Welsh "would have provided arguable justification for [Husok's] actions—to protect Guerra from further abuse." Husok's Brief at 11.[8] This argument posits that Husok had a viable defense of others defense. However, the use of force in such a situation is

_____

[7] The Commonwealth also notes that the police were able to get Husok to write a statement apologizing to his family for doing "something very bad" and that he "will be gone for a very long time." N.T., Vol. II, 10/6/16, at 472.

[8] Husok also argues that Guerra's testimony would have provided a basis for voluntary manslaughter. Husok's Brief at 9. Besides not developing this contention, Husok has waived this argument for failing to raise it in his PCRA petition. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

justifiable only if such force would be justifiable for the actor to protect himself, that is, self-defense pursuant to 18 Pa.C.S. § 505. See 18 Pa.C.S. § 506(a)(1).[9]

Additionally, even without Guerra's testimony, defense counsel still argued to the jury that Welsh beat Guerra earlier in the morning. As noted above, the jury was shown multiple photographs of Guerra showing that she had bruising on her arms, legs and chest. N.T., Vol II., 10/6/16, at 526-532. Despite no testimony from Guerra about how she got the bruises, defense counsel still argued throughout his closing statement that the bruising was caused by Welsh, with the Commonwealth never objecting. See, e.g., id. at 667 ("These bruises … corroborate my client's confession as to what happened this night. She was being beaten up by Mr. Welsh, and she had to get out of

_____

[9] Under Section 506 of the Crimes Code:

> (a)    General rule.--The use of force upon or toward the person of another is justifiable to protect a third person when:
>
> (1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;
>
> (2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and
>
> (3) the actor believes that his intervention is necessary for the protection of such other person.

18 Pa.C.S.A. § 506(a).

there."). Moreover, while pointing out that there was not any evidence to prove that the bruises were caused by Welsh, the Commonwealth argued that Husok's use of deadly force would not be excused even if Welsh actually assaulted or grabbed Guerra earlier in the morning. Id. at 732-33. Thus, while Guerra's testimony may have made it more believable that Welsh assaulted her, defense counsel was ultimately still able to present that argument to the jury.

Accordingly, even if there was no reasonable basis for defense counsel's unfulfilled promise to call Guerra, we conclude that there is no genuine issue of material fact that her testimony, if presented, would have created a reasonable probability of a different outcome at trial.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2020